S. E. RONDON COMPANY, Stephen Rondon, James L. Beebe, dba B. B. Oil Company, Plaintiffs,

v.

ATLANTIC RICHFIELD COMPANY, Defendant.

Civ. No. 68–11–IH.

United States District Court
C. D. California.

Sept. 3, 1968.

Richard H. Hicks, San Francisco, Cal., for plaintiffs.

Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendant.

## MEMORANDUM OF OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

(Findings of Fact and Conclusions of Law Embodied Herein)

IRVING HILL, District Judge.

The motion of Defendant for partial summary judgment under Civil Rule 56(d), filed March 28, 1968, came before the Court for hearing on May 13, 1968, and counsel for both sides appeared at that time. The Court having heard oral argument and having considered the said motion together with the points and authorities, affidavits and other documents filed in support thereof and in opposition thereto, and having also considered the remainder of the files and records of the case, renders its memorandum opinion and order as follows:

This is an antitrust action filed December 15, 1967. Plaintiffs are S. E. Rondon Company and Stephen Rondon.[1]

---

1. There is another Plaintiff, James L. Beebe who is also a distributor of gasoline purchased from the Defendant. Beebe executed no release and his action against the Defendant is not affected by the instant motion.

Plaintiffs are distributors and retailers of a secondary brand of gasoline, "Rocket" brand, produced by, and purchased from, the sole Defendant, Atlantic Richfield Company. Plaintiffs charge violations of the Sherman and Clayton Acts, particularly that Defendant, alone, and in conspiracy with other refiners and distributors, fixed the retail price of gasoline purchased by Plaintiffs from Defendant and forced Plaintiffs to adhere to the retail price so fixed. These illegal acts are charged as having begun in 1960 and as having continued down to December, 1967, when the action was filed.

It appears that on April 12, 1967, Plaintiffs executed a release in favor of Defendant. The release will be described in detail infra. Based on the release, Defendant seeks a partial summary judgment to the effect that its liability, if any, in the action shall be limited to acts occurring after April 12, 1967.

## UNDISPUTED FACTS

The facts set forth under this heading are not disputed.

A. Plaintiffs have distributed gasoline produced by Defendant since 1947 pursuant to one or more written distributor agreements. At the time of the filing of the instant action Plaintiffs owned and operated five service stations, leased and operated eleven more service stations, and distributed gasoline to about thirty additional independent service station owners. Defendant's gasoline was sold and distributed to and through all of these outlets. (See affidavit of Stephen Rondon filed January 22, 1968.)

B. During the relationship of the parties, Plaintiffs incurred a number of separate indebtednesses to Defendant including the following indebtednesses and security agreements:

(1) Promissory note in the amount of $60,000 dated February 1, 1964, executed by Stephen Rondon and his wife Virginia Rondon. (Exhibit A to

Affidavit of Richard H. Hicks, filed April 23, 1968).

(2) Deed of Trust on real property owned by Stephen Rondon and his wife Virginia Rondon, executed February 1, 1964. (Exhibit B to said Hicks Affidavit).

(3) Personal guarantee of the debts of S. E. Rondon Company executed by Stephen Rondon and his wife Virginia on April 30, 1964. (Exhibit C to said Hicks Affidavit).

(4) Promissory Note in the amount of $235,537 executed by S. E. Rondon Company on December 10, 1965. (Exhibit D to said Hicks Affidavit).

(5) Promissory Note in the amount of $25,000 executed by S. E. Rondon Company on April 12, 1967.

(Exhibit B, 18 to the Deposition of Stephen Rondon).

C. Before making the $25,000 loan evidenced by the Promissory Note of April 12, 1967 (Item (5) above), Defendant required Plaintiffs and Mrs. Virginia Rondon, wife of Stephen Rondon, as additional consideration for said loan, to execute a release. The said release is dated April 7, 1967, and is found as an Exhibit attached to the Affidavit of Ralph Eckles filed March 28, 1968. Under the said release, each releasor releases Defendant and its officers, directors, agents and employees of any and all claims, demands or causes of action, known or unknown, which the releasors may have had up to the date of the release, including, but not by way of limitation, any claims, demands and causes of action, known or unknown, suspected or unsuspected, "relating to or arising out of or in any way connected with distributor agreements [by and between Plaintiffs and Defendant]" or "relating to or arising out of or in any way connected with the operations of the parties thereunder."

Because Plaintiffs make no contention to the contrary, I assume that the negotiations for the said $25,000 loan and release were not related to any negotiations in connection with any gasoline dis-

tribution agreement and the said loan was not made in connection with the execution or renewal of any such agreement.

## ISSUE PRESENTED
## ALLEGED FACTUAL DISPUTES

Plaintiffs ask the Court to deny the requested partial summary judgment on the ground that the release is invalid as against public policy. As an alternative ground, Plaintiffs ask the Court to deny the partial summary judgment on the ground that there are disputed issues of material fact which must be heard and determined before the validity of the release can be decided.

The only disputed issue of material fact which Plaintiffs claim exists, is as to the motivation and intent underlying or accompanying Defendant's demand that the release be executed. The Court is in doubt as to whether there is a bona fide dispute made by affidavits as to any such factual matter. But even if such factual matters are properly in dispute, these disputes are not disputes of *material* fact. Even if the release was demanded and obtained, as Plaintiffs' counsel urged in argument, with the specific intent and purpose of preventing Plaintiffs from filing an antitrust action, that fact would not invalidate the release as I read the applicable law. Thus, the factual dispute, if there is one, is immaterial.

## DISCUSSION OF LAW

█ It is the policy of the law to encourage the settlement of disputes both before litigation has commenced and thereafter. This policy extends to the settlement of antitrust litigation. Suckow Borax Mines Consol. v. Borax Consol., 185 F.2d 196, 208 (9th Cir. 1950).

Plaintiffs concede that if valid and enforceable, the instant release bars their action against Defendant for acts occurring before April 12, 1967. Plaintiffs do not contend that the release was obtained by any fraud or misrepresentation. They make no effort to rescind the release on any ground for which rescission is permitted. They do not contend that Defendant was under a legal obligation to loan the money to them. They do not argue that Defendant impeded their access to any other sources of loans. They do not contend that they were unaware of the wording of the release before they signed it. (In fact they took it home for overnight consideration before signing it.) They do not contend that the Defendant used the loan, once it had been made, as a weapon or lever to force Plaintiffs to adhere to prices fixed by Defendant. This particular loan was a comparatively small one in a series of loans and indebtednesses of over $300,000. Nor do they allege any horizontal conspiracy between Defendant and any other gasoline producers whereby they agreed to subjugate dealers and distributors by making loans to them.

Plaintiffs' claim that the instant release should not be enforced as being void and against public policy, rests on two contentions:

1. The release was obtained in furtherance of, and as part and parcel of, the antitrust conspiracy and course of action.

2. The release was obtained through the exercise of economic coercion, duress and business compulsion. Such economic duress, Plaintiffs argue, occurred as follows: Plaintiffs had incurred large losses by adhering to the pricing policies Defendant had forced on them in the past. As a result of these losses, the only source of loans which were necessary for Plaintiffs' business survival was Defendant who conditioned the granting of this loan on their signature of the release.

Both contentions were made and rejected in Suckow Borax Mines Consol. v. Borax Consol., supra. I regard the decision of our Circuit in *Suckow* as dispositive on both issues.

■ On the first claim, the so-called "part and parcel" concept, some additional discussion is in order. Plaintiffs do not contend that the instant release embodies, or materially aids in the accomplishment of, any of the illegal objectives of the alleged conspiracy. The instant case can thus be distinguished from Carter v. Twentieth Century-Fox Film Corp., 127 F.Supp. 675 (W.D.Mo. 1955). In *Carter* it appears that the release in question was one clause of a contract which was the very restraint of trade complained of. In fact, Plaintiffs have failed to show any special or unusual tie-in of the release with the alleged conspiracy and restraint which destroys any effect of its "part and parcel" claim. See decision of Judge Pence on Defendant's Motion for Partial Summary Judgment in California Concrete Pipe Co. v. American Pipe & Construction Co., 288 F.Supp. 823, United States District Court, Central District of California, dated July 31, 1968. See also Taxin v. Food Fair Stores, Inc., 287 F. 2d 448, 451 (3d Cir. 1961).

■ On the second contention, i. e. economic compulsion, some additional comment is also in order. Plaintiffs cite no authority for the proposition that a settlement accompanied by a release is void if the releasor is in financial straits when he executed the release as a result of prior wrongs done him by the releasee. If Plaintiffs' reasoning were accepted on this point, it would involve courts in the almost impossible task of reconstructing a releasor's mental process as of the date of his executing a release document. The court would have to determine whether a release was executed because the signer felt the settlement to be a favorable one, or because of his strained financial condition. Certainly every release executed as consideration for a needed loan, is motivated in some respects by the financial condition of the releasor. To hold a release void because of the releasee's pre-existing wrong which resulted in financial hardship to the releasor would be to invite an attempt to void almost every such settlement and release. It would greatly impair the policy of encouraging private settlements. Parties negotiating such settlements need to have confidence in the enforceability of the settlement they reach.

Counsel for Plaintiffs attempt to distinguish *Suckow* on the ground that the Plaintiff there had commenced a legal action at the time the release was executed, whereas Rondon had not. There is no precedent for such a distinction and there is no logical basis for applying a different rule of law to a release signed before litigation starts than to a release signed afterwards. Settlement of controversies before litigation commences is even more to be encouraged.

I hold that the case is ripe for summary judgment as involving only a question of law. I hold that Defendant is entitled to a partial summary judgment as prayed. This memorandum shall serve as both findings of fact and conclusions of law. A partial summary judgment has been signed and is ordered filed contemporaneously with the filing of this document.

It is further ordered that the Clerk serve copies of this Memorandum of Opinion and Order together with the Partial Summary Judgment, on counsel for both parties this date.

ORDER AND PARTIAL SUMMARY JUDGMENT

This Court, having made Findings of Fact and Conclusions of Law upon Defendant's motion for partial summary judgment under Federal Rule of Civil Procedure 56(d), it is hereby ordered that Defendant's motion be and the same hereby is granted, and

It is hereby ordered, adjudged and decreed, that summary judgment be entered in favor of Defendant Atlantic Richfield Company against Plaintiffs S. E. Rondon Company and Stephen Rondon as to all claims, demands and causes of action asserted by said plaintiffs in this action arising from or based on any alleged acts or events occurring prior to April 12, 1967.