917 So.2d 922 (2005)
PATCO TRANSPORT, INC. and Broadspire, Appellants,
v.
Jose ESTUPINAN, Appellee.
No. 1D05-0483.
District Court of Appeal of Florida, First District.
December 14, 2005.
Rehearing Denied January 12, 2006.
Edward T. LeFever, Esq. and Donald M. McCathran, Jr., Esq. of Edward T. LeFever, P.A., Ocala, for Appellants.
Martha Fornaris, Esq., Coral Gables and Bill McCabe, Esq., Longwood, for Appellee.
BENTON, J.
While driving a truck for Patco Transport, Inc. (Patco) on December 19, 2001, Jose Estupinan was struck from behind by a truck driven by another driver of a Patco truck. Almost two years later, Mr. Estupinan filed suit in circuit court against Patco and others, alleging the other driver's negligence had injured him.
Settling the civil suit for $10,000.00 while represented by counsel, Mr. Estupinan executed a "General Release With Indemnification" on April 7, 2004, after which the circuit court dismissed the case with prejudice on April 27, 2004. Less than three weeks later, the general release notwithstanding, Mr. Estupinan filed a petition for benefits on May 14, 2004,[1] alleging that on *923 "December 19, 200[1]," he had been "involved in a work-related motor vehicle accident when he was rear-ended by another vehicle, suffering injuries to his back, head and neck."
Patco argued to the judge of compensation claims that the general release barred a workers' compensation award on top of the $10,000.00 settlement. In the order under review,[2] however, the judge of compensation claims accepted Mr. Estupinan's argument "that he released Patco only in the capacity of the owner of the vehicle that struck his truck but not in his capacity as his employer." We reject this crabbed interpretation of wording plainly meant to be much more expansive. The language used in the general release "is the best evidence of the parties' intent. When that language is clear and unambiguous[[3]], the courts cannot indulge in construction or interpretation of its plain meaning." Hurt v. Leatherby Ins. Co., 380 So.2d 432, 433 (Fla.1980). The general release is broad enough to cover petitions for workers' compensation benefits when it refers to "full settlement and discharge of all claims which are, or might have been, the subject matter of the Complaint...."
Unlike the dissenting opinion, we do not find "perplexing" the phrase "claims which might have been the subject matter of the complaint." The operative language is actually broader: "any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery, which the Plaintiff now has, or which may hereafter accrue or otherwise be acquired, on account of, or may in any way grow out of, or which are the subject of the Complaint (and all related pleadings)." Neither the broader language nor the phrase "claims which might have been the subject matter of the complaint" excludes claims which, while they might have been the subject matter of the *924 complaint, might also have been framed as claims cognizable in another tribunal.
Actually stated in the complaint were claims for "bodily injury resulting in pain and suffering, permanent injury, permanent aggravation of a pre-existing condition, disfigurement, disability, mental anguish, loss of the capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, and loss of earnings." The parties settled all claims which might have been the subject matter of the complaint, including any such claims that might, at the claimant's option, have been presented to a county judge or to a judge of compensation claims instead.
The judge of compensation claims took the view that "[c]laimant's workers' compensation claim could not have been the subject matter of the complaint because F.S. 440.11 provided Patco with immunity from civil action." The judge of compensation claims is undoubtedly correct that Patco could have set up workers' compensation immunity as an affirmative defense in the civil suit as, indeed, the other driver, if an employee of Patco, could also have done. See § 440.11(1), Fla. Stat. (2001) ("The same immunities from liability enjoyed by an employer shall extend as well to each employee of the employer when such employee is acting in furtherance of the employer's business and the injured employee is entitled to receive benefits under this chapter.").
But the fact that Patco might have availed itself of an affirmative defense it did not in fact invoke does not alter the scope or subject matter of the complaint Mr. Estupinan filed in circuit court.[4] Patco's decision not to raise workers' compensation immunity as an affirmative defense in the civil case but to enter into a settlement instead was its prerogative; the settlement check and the parties' stipulation to a judgment dismissing the complaint could and should have resolved all claims for injuries arising from the accident "based on a tort, contract or other theory of recovery" without the need for further litigation.
But it is also true that, in failing to raise workers' compensation immunity as an affirmative defense, Patco made a choice that, but for the settlement, might have led *925 to entry of judgment against it for the very back, head, and neck injuries Mr. Estupinan later alleged in his petition for benefits. See generally Powers v. E.R. Precision Optical Corp., 886 So.2d 281, 282 n. 1, 283 (Fla. 1st DCA 2004) (noting judgment entered in circuit court against employer in favor of employee for past and future medical expenses, pain and suffering, disability, physical impairment, mental anguish, inconvenience, aggravation of disease or physical defect, and loss of capacity for the enjoyment of life, without deciding whether the employer "could have avoided liability in the civil suit on the basis of statutory immunity").
The parties were entitled to settle the workers' compensation claims, and execution of the general release "in exchange for a lump-sum payment" accomplished that result. See § 440.20(11)(c), Fla. Stat. (2001) ("[W]hen a claimant is represented by counsel, the claimant may waive all rights to any and all benefits under this chapter by entering into a settlement agreement releasing the employer and the carrier from liability for workers' compensation benefits in exchange for a lump-sum payment to the claimant."). "There are no words of art required in a release if the intent of the parties is apparent from the language used." Hardage Enters., Inc. v. Fidesys Corp., N.V., 570 So.2d 436, 437 (Fla. 5th DCA 1990).
Reversed.
WOLF, J., concurs; ALLEN, J., dissents with opinion.
ALLEN, J., dissenting.
The appellants argue that the release clearly and unambiguously settled any potential claims of the appellee for recovery of chapter 440, Florida Statutes, workers' compensation benefits, and that the judge of compensation claims therefore erred in concluding that the appellee had not settled these claims. Because I cannot agree with the appellants or with the majority that the release clearly and unambiguously encompassed the appellee's workers' compensation claims, because the appellants make no alternative argument that the release was ambiguous but should nevertheless be construed in their favor, and because there is no indication that the parties complied with the section 440.20(11)(c), Florida Statutes, directive that workers' compensation settlement agreements must be approved by a judge of compensation claims, I would affirm the order under review.
Although referred to as a "general release," the release involved in this case is not a general release of the sort commonly encountered in resolution of civil litigation. Most general releases contain language similar to that employed in the release involved in Board of Trustees of Florida Atlantic University v. Bowman, 853 So.2d 507 (Fla. 4th DCA 2003). Under that release, each plaintiff, referred to as "First Party," was required to:
remise, release, acquit, satisfy, and forever discharge the said Second Party, of and from all, and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, costs (including attorneys fees, expert fees, and out-of-pocket expenses), pre and post-judgment interest, obligations, losses, loss of services, expenses, compensation, judgments, executions, claims and demands whatsoever, in law or in equity, which said First Party ever had, now has, or which any personal representative, successor, heir or assign of said First Party, hereafter can, shall or may have, against said Second *926 Party, for, upon or by reason of any matter, cause or thing whatsoever, known and unknown, foreseen and unforeseen, from the beginning of the world to the day of these presents, and including all issues, causes, claims, counterclaims, set-offs, and allegations which were raised or could have been raised relating to or arising out of certain action styled Laura Bowman, et al. v. Florida Board of Regents, Palm Beach County Circuit Case No.: CL 99-12145 AI.
853 So.2d at 508.
Unlike the comprehensive general release considered in Bowman, the release involved in the present case provided that it was given "in full settlement and discharge of all claims which are, or might have been, the subject matter of the Complaint...." This language calls for two questions to be answered in order to resolve the issue presented in this case. First, were the appellee's claims pursuant to chapter 440 claims which were the subject matter of the Complaint? And second, if the appellee's workers' compensation claims were not claims which were the subject matter of the complaint, might the workers' compensation claims have been made the subject matter of the Complaint? A plain reading of the release language fails to provide a clear and unambiguous answer to either of these questions.
The phrase "claims which are the subject matter of the complaint" is ambiguous in that it might be understood to refer either to claims already presented in the complaint or to claims arising from the circumstances described in the complaint. Although the workers' compensation claims were not presented in the complaint, they did in part arise out of the circumstances described in the complaint. The referenced phrase therefore does not clearly and unambiguously encompass the appellee's workers' compensation claims.
The phrase "claims which might have been the subject matter of the complaint" is equally perplexing. Although this phrase is at least arguably intended to preclude any claim that might have been presented in the circuit court complaint, it seems doubtful that the parties would have intended to include within this language claims that the circuit court would have lacked subject matter jurisdiction to adjudicate. And circuit courts clearly lack subject matter jurisdiction to address claims for benefits pursuant to chapter 440.
Finally, there is no indication or suggestion in this record that the settlement agreement which purportedly settled the appellee's rights under chapter 440 was approved by a judge of compensation claims as required by section 440.20(11)(c). Although this provision requires the judge of compensation claims to consider only the attorney's fees paid to the claimant's attorney, the judge of compensation claims' approval of this aspect of a workers' compensation settlement is mandatory. If the parties had actually intended to resolve chapter 440 claims through payment of the settlement proceeds and execution of the release, it is difficult to understand why they would not have complied with this statutory mandate. Additionally, it seems entirely possible that neither the appellee nor his attorney in the circuit court litigation believed that the attorney in the circuit court litigation was providing representation to the appellee in connection with potential workers' compensation claims. And if they did not believe that the attorney was providing such representation, it seems unlikely that the release could have lawfully effected a waiver of the appellee's rights to workers' compensation benefits. See §§ 440.20(11)(c), 440.21(2), Fla. Stat.
*927 Because neither the release language nor the parties' conduct in relation to the release clearly and unambiguously reveals an intent to settle potential workers' compensation claims, the order under review should be affirmed.
NOTES
[1] The petition for benefits was filed outside the statutory limitations period, see § 440.19(1), Florida Statutes (2001) ("[E]mployee petitions for benefits ... shall be barred unless ... the petition is filed within 2 years after the date on which the employee knew or should have known that the injury... arose out of work performed in the course and scope of employment."), but Patco did not raise the statute of limitations as a defense in its initial response to the petition. See § 440.19(4), Fla. Stat. (2001) ("Notwithstanding the provisions of this section, the failure to file a petition for benefits within the periods prescribed is not a bar to the employee's claim unless the carrier advances the defense of a statute of limitations in its initial response to the petition for benefits.").
[2] Even though the order under review, styled amended order on petition for benefits of 5/19/04, is interlocutory, we have jurisdiction because the order "expressly f[ou]nd[ ] an injury occurred within the scope and course of employment and that claimant is entitled to receive causally related benefits in some amount," and "certifie[d] in the order that determination of the exact nature and amount of benefits due to claimant will require substantial expense and time." Fla. R.App. P. 9.180(b)(1)(C) (2004).
[3] The general release, which neither party contends is in any way ambiguous, states, in part:

1.2 Plaintiff desires to enter into this General Release with Indemnification in order to provide for certain payments in full settlement and discharge of all claims which are, or might have been, the subject matter of the Complaint upon the terms and conditions set forth below.
2.0 Release
2.1 In consideration of the payment set forth in Section 3, Plaintiff hereby completely releases and forever discharges Defendants from any and all past, present or future claims, demands, obligations, actions, causes of action, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery, which the Plaintiff now has, or which may hereafter accrue or otherwise be acquired, on account of, or may in any way grow out of, or which are the subject of the Complaint (and all related pleadings) including, without limitation, any and all known or unknown claims for damages, or any future damages to the Plaintiff or his representatives or his heirs, which have resulted or may result from the Incident.
[4] The factual allegations of the complaint are as follows:

1. This is an action for damages which exceed Fifteen Thousand and 00/100 ($15,000.00) Dollars, exclusive of costs and interest.
2. The Accident giving rise to this cause of action occurred in Brooksville, Hernando County, Florida, therefore, venue is proper in Hernando County, Florida.
3. On or about December 19, 2001, Defendants ARAMIN R. RODRIGUEZ and PATCO TRANSPORT, INC., owned a motor vehicle and trailer which were operated with their consent by Defendant, SAMUEL LORENZO MUNIZ in or about Brooksville, Hernando County Florida.
4. That at said time and place, Defendant, SAMUEL LORENZO MUNIZ, so negligently and carelessly operated and or maintained the motor vehicle so as to cause an automobile accident, causing injuries to the Plaintiff, JOSE A. ESTUPINAN.
5. As a direct and proximate result of the above-described accident, the Plaintiff, JOSE A. ESTUPINAN, suffered bodily injury resulting in pain and suffering, permanent injury, permanent aggravation of a pre-existing condition, disfigurement, disability, mental anguish, loss of the capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, and loss of earnings. These losses are permanent and continuing in nature, and the Plaintiff, JOSE A. ESTUPINAN, will suffer these losses in the future.
Although the petition for benefits is less detailed, it pertains to the same accident and concerns nothing else.